Anthony J. Colton, OSB 253410\
Assistant Federal Public Defender
Email: anthony_colton@fd.org
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL CARTER,

Defendant.

Case No. 3:26-mj-00267

MOTION FOR REVOCATION OF DETENTION ORDER

(oral argument requested)

Michael Carter, through counsel, Anthony J. Colton, and pursuant to 18 U.S.C. §§ 3142 and 3145, respectfully asks the Court to review the order of detention entered by Magistrate Judge Jolie A. Russo and to authorize Mr. Carter's release on conditions so he can appear out-of-custody in his New York matter. Mr. Carter respectfully requests a prompt disposition as required by statute to avoid any further unlawful detention.

**Procedural and Factual Background**

Mr. Carter was arrested on October 1, 2026, at his girlfriend's house in Portland, Oregon, based on a complaint from the Northern District of New York

alleging bank fraud under 18 U.S.C. § 1349. He was brought to court in the District of Oregon for a Rule 5 hearing. The government requested a detention hearing under 18 U.S.C. § 3142(f)(2), claiming that Mr. Carter was a serious flight risk. As evidence, the government cited his two pending felony cases in New York and three failures to appear (one from 2023 and two from 2014). Mr. Carter argued that he does not present a serious risk of flight because he has lived in the same residence in New York with his step-father for the last four (4) years and in the Albany area for his entire life, he was in Oregon visiting his girlfriend and his eight-month old daughter, he was in compliance with the conditions of his bond in New York, and had a return flight booked to New York for Saturday, October 3rd.

Judge Russo decided that the government had shown that it was entitled to a hearing under (f)(2) and subsequently detained Mr. Carter. Mr. Carter requests a review of Judge Russo's decision pursuant to 18 U.S.C. § 3145(b).

## Argument

### A. Standard of Review

When a defendant seeks review of a magistrate judge's order of detention, the district court is bound to review the matter de novo, and undertake a complete review of the matter for the purpose of arriving at its own "independent conclusion." *See United States v. Duncan*, 897 F. Supp. 688, 689-90 (N.D.N.Y. 1995) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)); *see also*, *United States*

*v. King*, 849 F.2d 485, 489-91 (11th Cir. 1988); *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985). 18 U.S.C. § 3145(a)-(c).

With respect to the risk of nonappearance, the government's burden is preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). "The Ninth Circuit's 'preponderance of the evidence' standard in pretrial detention matters is more than the usual 'tips the scales slightly' test applied in civil cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). "Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Id*. Further, a finding that a defendant is a danger to any other person or the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B)

**B. Mr. Carter is not a flight risk, let alone a "serious risk of flight"**

At both the initial appearance and detention hearing, the government failed to carry its burden to show that Mr. Carter should be detained. First, the Bail Reform Act did not authorize a detention hearing in this case because the government failed to show that there was a serious risk that Mr. Carter would flee. The evidence the government presented described an ordinary (and minor) risk of non-appearance rather than a serious risk of flight. Second, even if a detention hearing was authorized, Mr. Carter should have been released because there are

conditions that would reasonably assure his appearance and the safety of the community.

According to the plain language of § 3142(f), "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in § 3142(f)(1) and (f)(2). Mr. Carter was not charged with an (f)(1) offense. Accordingly, a detention hearing was only authorized if the government showed there was a serious risk that he would flee. The government did not meet its burden to establish that there is a serious risk that Mr. Carter will flee.

When the government's only ground for detention is "serious risk" of flight, the government bears the burden of establishing, by a preponderance of the evidence, that there is a serious risk rather than the ordinary risk that exists in any criminal matter. *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986). Ordinary risk of nonappearance is an impermissible basis for detention, because risk of flight "is distinguishable from, and more narrow than, risk of non-appearance." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1137 (D. Idaho 2023). "Taken together, then, a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Id.* Here, there was no evidence presented to support a finding of any risk of flight more than what is normal in criminal cases. To show that Mr. Carter presents a serious risk of flight, the government pointed to the fact that Mr. Carter has two

pending criminal cases in New York state court and that he had three prior failures to appear, two of which are from 2014 and one of which is from 2023. But the government failed to show that these facts are relevant to the question of whether Mr. Carter presents a serious risk of flight. The New York state courts released Mr. Carter on bond conditions, and there was no evidence that he was not in compliance with those conditions. Moreover, three failures to appear for court dates, two of which are over ten years old, are plainly insufficient to establish the serious risk of flight required by the Bail Reform Act. *See Figueroa-Alvarez*, 681 F.Supp.3d at 1137. Mr. Carter was in Oregon on a two week vacation to visit his girlfriend and their eight-month-old child. He planned to return to New York this weekend. Why the government couldn't have just waited the two days for him to return to his home in New York to arrest him is a mystery. There was no evidence presented that he did not intend to return to New York, where he has lived for all his life and where his entire extended family and two of his children reside. In fact, his plane ticket to return to New York on October 3rd speaks to the contrary.

**Conclusion**

Mr. Carter should have been released at his initial appearance when the government failed to show that there was a serious risk of flight. Even had the government shown itself entitled to a detention hearing, Judge Russo should have ordered Mr. Carter released because, as shown in the pretrial services report, there are conditions that could reasonably assure his future appearance and the

safety of the community. Mr. Carter respectfully requests that this Court revoke Magistrate Judge Russo's ruling and order him released with all conditions recommended by Pretrial Services.

Dated: October 2, 2026.

*/s/ Anthony J. Colton*
Anthony J. Colton, OSB 253410